1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11 EDWIN SANTANA,                    )   NO. EDCV 07-01113 SS

12            Plaintiff,             )
                                     )
                                     )   **MEMORANDUM DECISION AND ORDER**
13        v.                         )
                                     )
14 MICHAEL J. ASTRUE,                )
   Commissioner of the Social       )
15 Security Administration,          )
                                     )
16            Defendant.             )
   _____   )

17

18                                **I.**

19                          **INTRODUCTION**

20

21     Edwin Santana ("Plaintiff") brings this action seeking to overturn

22 the decision of the Commissioner of the Social Security Administration

23 (hereinafter the "Commissioner" or the "Agency") denying his application

24 for Disability Insurance Benefits ("DIB") and Supplemental Security

25 Income ("SSI").  The parties consented, pursuant to 28 U.S.C. § 636(c),

26 to the jurisdiction of the undersigned United States Magistrate Judge.

27 For the reasons stated below, the decision of the Commissioner is

28 AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on January 6, 2004 (Administrative Record ("AR") 15).  He alleged a disability onset date of October 26, 1999 (AR 15, 82) due to pain in his neck, shoulder, arms, and hands.  (AR 19).  Administrative Law Judge ("ALJ") Keith Dietterle found this pain was due to multi-level cervical disc herniations with radiculopathy to both upper extremities with status post cervical fusion, bilateral shoulder and elbow strains, and shoulder tendinitis.  (AR 17).  Plaintiff also claimed he suffered from depression.  (Id.).

The Agency denied Plaintiff's claim for DIB and SSI initially on July 22, 2004.   (AR 68-69).   This denial was upheld upon reconsideration.  (AR 15).  On January 31, 2007, the ALJ conducted a hearing to review Plaintiff's claim.  (Id.).  The ALJ denied benefits on March 21, 2007.  (AR 23).  Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied his request on July 23, 2007.  (AR 4).  The ALJ's decision therefore became the final decision of the Commissioner.  (Id.).  Plaintiff commenced the instant action on October 3, 2007.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on May 11, 1959 and was forty-seven years old at the time of the hearing.  (AR 82).  He has completed one year of

junior college.  (AR 638).  He has past work experience as a materials expediter.  (AR 644).

### A.   **Plaintiff's Medical History**

Plaintiff's injury occurred on September 2, 1999, during the course of his work as a production control expediter.  (AR 185).  He "was moving a . . . rack using a mule, backing it up, constantly looking over [his] shoulders, when [he] felt discomfort in [his] neck area." (Id.).  Plaintiff was referred to a physical therapist who, on September 15, 1999, diagnosed Plaintiff with a strained neck and cervical radiculitis.  (AR 183).  Plaintiff received regular checkups, and on October 26, 1999, Dr. Joseph C. Laughlin, an Orthopedic Surgeon, diagnosed him with degenerative cervical disc disease.  (AR 159).  Dr. Laughlin found that Plaintiff's "impingement" problems were "in the mild category, not even moderate, and that the majority of these mild symptoms can gradually subside."  (AR 198).

In April 2001, Dr. Robert W. Hunt diagnosed Plaintiff with a "cervical thoracic strain with secondary radiculopathy to the bilateral upper extremities, bilateral shoulder strain . . . , [and] bilateral elbow strain."  (AR 380).  Plaintiff's treating physician, Dr. Winston Wong, summarized Plaintiff's remaining abilities in light of his injuries.  (AR 579-82).  In a check off sheet, Dr. Wong reported to the ALJ that Plaintiff could both occasionally and frequently lift ten pounds, could sit less than six hours per eight hour work day, and had limited pushing and pulling abilities in his upper extremities.  (AR 579-80).  Additionally, Dr. Wong checked the boxes indicating that

Plaintiff was limited in his ability to reach and to work around hazards such as machinery and heights. (AR 581-82). Dr. Wong indicated that Plaintiff's injury did not affect his ability to stand or to occasionally climb, balance, kneel, crouch, crawl, or stoop. (AR 579-80). Plaintiff's impairment did not interfere with his ability to perform gross or fine manipulations, or see, hear, or speak, nor did it prevent him from working around noise, dust, vibration, humidity or wetness, fumes or odors, or in extreme temperatures. (AR 581-82). Dr. Wong regularly refilled Plaintiff's prescriptions for medication to treat the above complaints. (Id.).

In 2001, Plaintiff attended and graduated from a thirteen week vocational rehabilitation course. (AR 308). Even after he graduated from the program, he continued to attend classes. (AR 327).

**B.    Consultative Examinations**

Dr. Edwin Ashley, an orthopedic surgeon, examined Plaintiff on July 5, 2000, and November 8, 2000, and issued his final report on February 29, 2001. (AR 253-69). Over the course of those examinations, Dr. Ashley diagnosed Plaintiff with a chronic right cervical sprain/strain, a bilateral shoulder strain, and shoulder tendinitis. (AR 267). Dr. Ashley concluded that Plaintiff was permanently partially disabled by his injuries. However, the only restrictions found by Dr. Ashley were no lifting of more than twenty pounds and no overhead work. (AR 262).

4

On December 5, 2002, Dr. Alexander Angerman, an orthopedic surgeon, met with Plaintiff to perform a Qualified Medical Examination.  (AR 333).  Dr. Angerman diagnosed Plaintiff with a cervical spine strain superimposed on discogenic and degenerative disease, as well as carpal tunnel syndrome.  (AR 358).  However, the only limit Dr. Angerman placed on Plaintiff's capacity for work was a restriction against very "heavy work" and "prolonged motions of the cervical spine."  (AR 360).

On June 23, 2004, Dr. Sarah Haze performed a neurological evaluation of Plaintiff.  (AR 365).  Though she did not provide a new diagnosis, Dr. Haze concluded that Plaintiff would be able to occasionally lift twenty pounds and frequently lift fifteen to twenty pounds.  (AR 368).  She additionally concluded that Plaintiff could stand, sit, and walk for six hours in an eight hour day, and could perform fine motor activities with his arms.  (<u>Id.</u>).  Dr. Haze noted that Plaintiff could "spontaneously move his neck with far more flexibility than is obtained on formal testing."  (<u>Id.</u>).

In the mental status portion of her exam, Dr. Haze noted that Plaintiff appeared depressed, but that his general fund of knowledge was excellent, he had no problems with immediate recall or remote and recent memory, and his attention and concentration were not impaired.  (AR 367).

Plaintiff underwent a formal psychiatric evaluation on March 17, 2004, with Dr. M. Becraft.  (AR 559).  Dr. Becraft diagnosed Plaintiff with both "Affective Disorders" and "Substance Addiction Disorders."

1   In the evaluation, Dr. Becraft wrote the following: " . . . Clmts.

2   all[egations] not fully credible, esp. given severity of drinking

3   problem.   Even tho., impairment non-severe and t [treatment] hx

4   [history] minimal."   Also, under the diagnosis of "Substance Addiction

5   Disorders," Dr. Becraft wrote "ETOH [alcohol] Dep. [dependency] vs.

6   abuse ongoing."  (AR 560).   In the Functional Limitation portion of the

7   evaluation, Dr. Becraft found that Plaintiff only had mild limitations

8   of his mental functions and no episodes of decompensation.  (AR 570).

9

10   **C.   Plaintiff's Testimony**

11

12        On January 31, 2007, Plaintiff appeared at a hearing before the

13   ALJ.  (AR 634).   He testified that the injury at issue in this case

14   occurred in 1999, while at work.  (AR 643).   He was backing up and hit

15   a drainage ditch while looking over his shoulder, injuring his neck.

16   (Id.).   As a result of that incident, Plaintiff testified that he has

17   constant pain in his neck, shoulders, and arms.  (AR 640).

18

19        Plaintiff testified that, at the time of the hearing, he was living

20   with his wife and three children, ages five, four and five months.  (AR

21   624).   He takes his children to the park and the market.  (AR 631).

22   He testified that he needs help scrubbing his back when bathing.  (AR

23   641).   He has difficulty raising his arms to put on a shirt.  (Id.).

24   He testified that he does not do any cooking, cleaning, or other

25   household chores, instead relying on his wife and mother-in-law.  (AR

26   641-42).   He spends his time reading, eating, sitting on the couch and

27   watching T.V.  (AR 628).   He does not drive because he does not have a

28

drivers license.   (AR 629).   He lost his license when he was caught

driving with a suspended license in 2005.   (AR 629-630).


Plaintiff takes several medications.   He testified that he takes

Soma and Norco in the mornings, and a Valium at night before going to

sleep.   (AR 637, 642).   Despite having taken the Soma and the Norco

before the hearing, Plaintiff told the ALJ that those medications would

not affect his testimony.   (AR637).   Plaintiff testified that when the

medication was working, he could sit for ten to fifteen minutes.   (AR

642).   If it was not working, Plaintiff said that he needed to get up

and walk around to relieve his pain.   (Id.).


**D.   Vocational Expert's Testimony**


Kelly Winn-Voytay testified at the January 31, 2007, hearing as a

vocational expert ("VE").   (AR 644).   After the VE heard Plaintiff's

testimony and reviewed his file, the ALJ posed two hypotheticals to the

VE.   In both, the VE considered a person with work experience as a

materials expiditer and one year of college education, who could both

speak and read English.   (AR 645).   In the first hypothetical, the ALJ

described a person who could sit or stand and walk for six hours out of

an eight hour day.   (Id.).   The person could occasionally lift twenty

pounds and frequently lift ten pounds.    (Id.).   The person could

frequently use both arms to push, pull, and perform gross manipulations.

(Id.).   This hypothetical person could only occasionally climb, bend,

balance, stoop, kneel, crouch, or crawl, and could not reach overhead,

turn his neck, or work around unprotected heights, dangerous machinery,

or fast moving machinery.   (Id.).   Given this hypothetical, the VE found

that such a person could not return to his past job as a materials expiditer, but could find work as a cashier or an office helper. (AR 645-46). The second hypothetical was identical to the first, except with the restriction that the person could only "occasionally and frequently" lift ten pounds. (AR 646). With that change, the VE found that the person would not be suited for work as an office helper, but could still perform work as a cashier. (Id.).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work? If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of

9

establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 23). At the first step, the ALJ observed that Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision. (AR 17). Next, he found that Plaintiff had the severe impairments of multi level cervical disc herniations with radiculopathy to both upper extremities with status post cervical

---

[2]    Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record." 20 C.F.R. §§ 404.1545(a), 416.945(a).

10

fusion, bilateral shoulder and elbow strains, and shoulder tendinitis. (Id.).  He specifically found Plaintiff's depression did not amount to a severe mental impairment.  (AR at 17-18).

At the third step, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment.  (AR 18). Next, at step four, the ALJ found that Plaintiff could no longer perform his past work, but he retained the RFC to perform work with restrictions.  (AR 18, 22).  The ALJ found that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours, and stand or walk for six hours in an eight hour day.  (AR 18). Additionally, Plaintiff could perform frequent pushing and pulling, as well as frequent gross manipulation with both upper extremities and occasional climbing, balancing, stooping, kneeling, crouching, or crawling.  (Id.).  The restrictions the ALJ found necessary were against reaching overhead, side to side movement of the neck, and working at heights and around dangerous and fast moving machinery.  (Id.).

Finally, at step five, the ALJ concluded that, based on Plaintiff's RFC and the testimony of the VE, Plaintiff could perform work as a cashier or an office helper.  (AR 23).  Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision.  (Id.).

11

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**VII.**

**DISCUSSION**

Plaintiff contends the ALJ erred for a number of reasons.  First, he claims that the ALJ improperly rejected the opinions of Plaintiff's treating physician concerning Plaintiff's functional status.  (Joint

12

Stipulation ("Jt. Stip.") at 3-4).   Second, he claims that the ALJ failed to comply with SSR 96-7p when he did not discuss the side effects of Plaintiff's medication.   (Jt. Stip. at 8).   Third, he contends that the ALJ improperly rejected the opinions of Plaintiff's treating physicians concerning the severity of Plaintiff's depression.   (Jt. Stip. at 10-11).   Finally, Plaintiff claims that the hypothetical question the ALJ posed to the VE did not fully describe Plaintiff's condition.   (Jt. Stip. at 13-15).   For the reasons discussed below, the Court disagrees with all of Plaintiff's contentions.

**A.   <u>The ALJ Properly Considered The Treating Physician's Opinion Of Functional Status</u>**

Plaintiff argues that the ALJ erred when he rejected the opinion of Plaintiff's treating physician, Dr. Wong, in determining Plaintiff's RFC.   (Jt. Stip. at 3-4).   He argues that the ALJ gave improper weight to the medical opinions of two consultative physicians.   Plaintiff's claim is without merit.

Although the treating physician's opinion is entitled to deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability."   <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999).   However, if the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.   <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991)).   Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may reject the

treating doctor's opinion only by providing "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester, 81 F.3d at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

The only difference between Dr. Wong's evaluation of Plaintiff and the RFC found by the ALJ is in the amount of weight Plaintiff could carry and how long he could sit. Dr. Wong restricted Plaintiff from carrying more than ten pounds or sitting for six hours or more. (AR 579-80). The ALJ found that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and could also sit for six hours. (AR 18). The ALJ supported this finding with the medical records of Drs. Ashley and Angerman. (AR 21-22). After examining Plaintiff and his medical records, Dr. Ashley concluded that Plaintiff could lift up to twenty pounds, with no other restrictions. (AR 268). Dr. Angerman concluded that the only necessary restrictions on Plaintiff's work were from "very heavy work, as well as prolonged motions of the cervical spine." (AR 360).

The ALJ recognized that his decision was contrary to that of Dr. Wong, but provided specific reasons why he gave more weight to the opinions of Drs. Ashley and Angerman. The ALJ noted, and the Court agrees, that Dr. Wong's records "contain few, if any, objective clinical findings productive of an assessment for less than sedentary work." (AR 21). Dr. Wong's evaluation of Plaintiff's limitations consisted primarily of a standard form with check-off boxes. (AR 579-82). When asked "[w]hat medical/clinical finding(s) support your conclusions [about Plaintiff's ability to lift weight and sit for extended

14

periods]," Dr. Wong only wrote "chronic LBP." (AR 580). Though the instructions on the form request that doctors identify the factors that support their assessments (AR 579), Dr. Wong neglected to do so. This alone casts doubt on the value of Dr. Wong's opinion, because ALJs are justified in distrusting check-off forms that do not explain the bases for their conclusions. <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996)(upholding ALJ's rejection of "check-off reports" because they lacked explanations for their findings). The ALJ further noted that Dr. Wong appeared to specialize in internal medicine, not orthopedics. (AR 22). Dr. Wong's interactions with Plaintiff seem to have been limited to prescription refills, with no physical examinations. (<u>See</u> AR 585-91).

In contrast, both Dr. Ashley and Dr. Angerman were orthopedic surgeons. (AR 269, 362). Both reviewed Plaintiff's medical history (AR 253-57, 341-58), and performed their own tests on Plaintiff. (AR 260-61, 339-41). Because of this, the ALJ found, and the Court agrees, that "Dr. Ashley and Dr. Angerman are better qualified to assess and evaluate [Plaintiff's] medical status and functional restrictions." (AR 22). The depth and detail of their reports, their specialization in orthopedics and their direct orthopedic examinations of Plaintiff are all specific and legitimate reasons to give greater weight to Drs. Ashley and Angerman's opinions. The ALJ's decision to base Plaintiff's RFC on the opinions of Drs. Ashley and Angerman rather than on that of Dr. Wong therefore does not warrant remand.

\\

\\

\\

**B.   Remand Is Not Required To Determine Plaintiff's Ability To Maintain Employment In Light Of The Side Effects Of His Medication**

Plaintiff argues that the ALJ failed to consider the side effects he experienced as a result of his medications. (Jt. Stip. at 8).  He claims that these side effects, including grogginess and sleepiness, have ramifications on Plaintiff's ability to work and it was error for the ALJ not to discuss them.  (<u>Id.</u>)  This claim is without merit.

Although the "type, dosage, effectiveness, and side effects" of any medication taken by the claimant to alleviate his or her pain or other symptoms are factors relevant to a disability determination and should be considered by the ALJ, 20 C.F.R. § 404.1529(c)(3)(iv); <u>see also</u> Social Security Ruling ("SSR") 96-8p, <u>available at</u>, 1996 WL 374184, a claimant bears the burden of proving that an impairment, including a medication's side effects, is disabling.  <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work).  Plaintiff has not met his burden in this case.

The main reference to grogginess in the record appears to be in a progress note from Dr. Wong, listing "groggy" as a side effect of Plaintiff's medications. (AR 587).  That progress note does not discuss the severity of the grogginess or whether it would interfere with Plaintiff's ability to work.  (<u>Id.</u>).  In contrast, Plaintiff reported having recently taken Soma and Norco at his hearing before the ALJ, and he testified that those medications would not affect him while

16

testifying.   (AR 637).   Additionally, Plaintiff completed a thirteen week vocational rehabilitation course in 2001, while taking the same medications.   (AR 308).   The course was five days a week for five 1/2 hours per day.   (AR 20).   Whatever side effects he may experience did not prevent him from attending and graduating from this course.

Additionally, there is evidence in the record that Plaintiff has an ongoing alcohol abuse problem.   (AR 599-560).   To the extent Plaintiff truly experiences grogginess or drowsiness, Plaintiff cannot show that these symptoms are directly attributable to his medications rather than his abuse of alcohol.

The record, including the medical evidence and Plaintiff's testimony, does not demonstrate that side effects from Plaintiff's medications interfered with his ability to work.   Therefore, the ALJ did not err in failing to consider those side effects in his decision.

**C.   <u>The ALJ Properly Considered The Treating Physician's Records When He Concluded That Plaintiff Did Not Suffer From A Severe Mental Impairment</u>**

Plaintiff claims that the ALJ erred when he did not consider Dr. Wong's notes when evaluating the severity of his mental impairment. (Jt. Stip. at 10-11).   In support of this claim, Plaintiff cites references to anxiety and depression in Dr. Wong's notes.

Dr. Wong's treatment notes contain brief references to depression. (<u>See</u> AR 585-91).   Dr. Wong also records Plaintiff's complaints of

17

anxiety attacks (AR 586) and an inability to sleep (AR 589).  There is little explanation in Dr. Wong's notes about these symptoms other than to recognize that Plaintiff reported them.

Other doctors examined Plaintiff and evaluated his mental health at the request of Defendant.  Following an examination, Dr. Becraft, a psychiatrist, diagnosed Plaintiff with an adjustment disorder, but concluded that it was not severe.  (AR 559).  He also diagnosed Plaintiff with ongoing alcohol abuse.  (Id.)  In a consultative neurological exam, Dr. Sarah Maze reported that Plaintiff appeared depressed, but noted that his "immediate recall, remote, and recent memory [were] good," and his "attention and concentration [were] not impaired."  (AR 367).

The ALJ concluded that the evidence did not show that Plaintiff had a severe mental impairment.  (AR 17).  He relied on the evaluations of Drs. Becraft and Maze, and found that there was no evidence under submission to contradict their conclusions.  (Id.).  Given this evidence, the ALJ decided that there were "no more than mild restrictions in daily activities, mild difficulties in social functioning, mild difficulties in maintaining concentration persistence or pace, and no episodes of decompensation."  (AR 18).

As noted in section A, above, the ALJ gave legitimate reasons to value Dr. Becraft and Dr. Maze's opinions over Dr. Wong's.  As noted by the ALJ, when discussing Drs. Becraft and Maze's reports: "no evidence has been submitted which would contradict [their] conclusion[s]."  (AR 17).  While Dr. Wong, an internist, mentioned Plaintiff's complaints,

18

he gave no indication regarding the level of severity or how those conditions would affect Plaintiff's ability to work.   In Dr. Wong's check-off statement regarding Plaintiff's ability to do work-related activities, he checked off the boxes indicating that Plaintiff had no limitations in his ability to "see, hear or speak." (AR 581).   He similarly checked off the boxes indicating that Plaintiff had no environmental limitations, other than hazards posed by machinery and heights.   (AR 582).   If Dr. Wong believed Plaintiff had limitations as a result of mental impairments, he could have either prepared a different form or written comments to that effect.   Dr. Wong's work evaluation does not reflect any limitations based upon Plaintiff's alleged mental impairment.

Plaintiff asserts that these conditions had a "significant impact on [Plaintiff's] ability to function . . . [because he] cannot use his imagination or concentrate," (Jt. Stip. at 11), but there is no evidence in the record to support this claim.   Again, both the neurological and psychiatric evaluations concluded that Plaintiff had mild or no impairment in concentration.   (AR 367, 570).   Although Plaintiff complains of mental impairments, he was able to complete a thirteen week vocational course.   Moreover, he continued to attend the school even after he completed the course.   (AR 308).

After considering the evidence before him, the ALJ did not err by concluding that Plaintiff's mental impairments were not severe.   It is true that step two of the five step evaluation process is a <u>de minimis</u> test — intended to weed out the most minor of impairments.   <u>See</u> <u>Bowen</u> <u>v. Yuckert</u>, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 2299-2300, 96 L. Ed.

19

2d 119 (1987)(O'Connor, J. concurring).  An ALJ may find an impairment not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005); <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001)(the step-two inquiry is a <u>de minimis</u> screening device to dispose of groundless claims)(quoting <u>Smolen v Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996)).  "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" <u>Webb</u>, 433 F.3d at 687.

Nonetheless, the medical evidence here suggested that if Plaintiff suffers from any mental impairment, that impairment is only a slight abnormality with a minimal effect on Plaintiff's ability to work.  The evaluations of Drs. Maze and Becraft both support this conclusion.  Substantial evidence, therefore, supported the ALJ's finding that Plaintiff did not suffer from a severe mental impairment.

Even if the ALJ erred, however, in his conclusion regarding the severity of Plaintiff's mental impairment, the error was harmless. <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006).  Had the ALJ found a severe mental impairment, he would nonetheless have looked to Dr. Becraft and Maze's evaluations to determine what impact, if any, Plaintiff's mental impairment has on his ability to work, because Dr. Wong's report did not include any such limitations.  As noted above, those doctors evaluations, finding no or only mild limitations, would not have significantly altered the ALJ's conclusions regarding

Plaintiff's residual functional capacity.   Remand is not required on this claim.

## D.   **The ALJ Posed A Complete Hypothetical Question To The Vocational Expert**

Plaintiff claims that the ALJ failed to ask the VE a complete and accurate hypothetical question.  (Jt. Stip. at 13-15).  Specifically, Plaintiff alleges that the ALJ erroneously failed to include in the hypothetical any mention of the side effect of grogginess Plaintiff reported.  (Jt. Stip. at 14).  The ALJ did not include any functional limitations due to grogginess in his hypothetical question.  (See AR 645-46).  Plaintiff claims that this was error, because "the treating physician clearly stated that [Plaintiff] was experiencing severe side effects from his medication," and these side effects would change the work available for Plaintiff in the national economy.  (Jt. Stip. at 14).  Plaintiff's claim does not warrant remand.

In order for the VE's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations."  Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995). However, the ALJ is not required to include limitations for which there was no evidence.  See Osenbrock, 240 F.3d at 1164-65; see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [the plaintiff] had claimed, but had failed to prove.").

1    An ALJ need not incorporate into the hypothetical subjective
2    complaints and alleged limitations that he deems not credible. See
3    Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Thomas v.
4    Barnhart, 278 F.3d 947, 959-60 (9th Cir. 2002). As discussed above in
5    subsection B, Plaintiff's complaint of grogginess was not well supported
6    by the medical record available to the ALJ. In addition, Plaintiff has
7    not shown that his alleged drowsiness was the result of medication
8    rather than alcohol abuse. Finally, even though Plaintiff admitted to
9    taking his medications on the day of his hearing, he also stated they
10   would not impact his ability to testify. (AR 637-38). Because
11   substantial evidence in the record belies Plaintiff's claims that his
12   medications rendered him groggy, the ALJ did not err by omitting
13   grogginess as a limitation when presenting the hypotheticals to the VE.
14   \\
15   \\
16   \\
17   \\
18   \\
19   \\
20   \\
21   \\
22   \\
23   \\
24   \\
25   \\
26   \\
27   \\
28

22

**VIII.**

**CONCLUSION**


Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 28, 2008.


_____/s/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[3]  This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

23